Filed 6/27/13  P. v. Jeter CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JOSE JETER,<br><br>     Defendant and Appellant. | A135074<br><br>(City & County of San Francisco<br>Super. Ct. No. 2438974) |

Defendant Jose Jeter appeals following entry of a guilty plea pursuant to plea agreement.  He contends the trial court erred in limiting his ability to earn conduct credit in prison and in limiting his presentence conduct credit.  He also argues that the abstract of judgment incorrectly states the restitution and parole revocation fines imposed by the court.  We agree that the abstract of judgment should be corrected to accurately reflect the restitution and parole revocation fines but otherwise reject Jeter's contentions on appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

In September 2009, San Francisco police responded to a report of a home invasion robbery in progress.[1]  Upon arriving at the scene, a police officer met with the victim, Felix Chan, who reported that the suspects had left his residence before the police arrived.  Chan told the officer that he was asleep in his bed when he heard a loud noise at his bedroom door.  Two males entered his room.  Chan heard a third intruder in the home.

---

[1]  Because the conviction resulted from a plea, the factual background is derived from the preliminary hearing transcript and the probation report.

1

One of the men pointed a gun at Chan and told him to lie face down on the bed. Chan complied. The men took cash and other items from the home before fleeing. Police recovered Jeter's fingerprint from Chan's computer and issued a warrant for Jeter's arrest.

The district attorney filed an information charging Jeter with robbery (Pen. Code, § 211)[2] and first degree residential burglary (§§ 459 & 460). The district attorney further alleged that Jeter personally used a firearm during the commission of the offenses (§ 12022.53, subd. (b)). It was alleged the burglary was a violent felony within the meaning of section 667.5, subdivision (c)(21) in that another person, other than an accomplice, was present in the residence during the commission of the burglary. The district attorney alleged that Jeter had suffered prior convictions for second degree robbery (§ 211) and false imprisonment (§ 236), thus rendering him ineligible for probation. (§ 1203, subd. (e)(4).) The prior conviction for second degree robbery also supported an allegation that Jeter had suffered a prior "strike" (§§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)) and had previously been convicted of a serious felony (§ 667, subd. (a)(1)). It was further alleged that Jeter had served a prior prison term within the meaning of subdivision (b) of section 667.5.

Pursuant to a plea agreement, Jeter pleaded guilty to the charge of first degree burglary (§ 459) and admitted the allegation that he had served a prior prison term for false imprisonment within the meaning of section 667.5, subdivision (b). The court found a factual basis for the plea based upon the record of the preliminary hearing as well as the parties' stipulation. The terms of the plea provided that Jeter would serve a five-year term of imprisonment composed of the midterm of four years for the burglary plus one year for the prior prison term. At no point during the plea colloquy did the court or counsel mention or refer to Jeter's eligibility for conduct credit, nor does the record reflect that the plea bargain included any agreement about that rate at which Jeter would earn conduct credit for time actually served.

---

[2] All further statutory references are to the Penal Code unless otherwise specified.

2

On the date set for sentencing, the trial court indicated that Jeter wanted to withdraw his plea because he believed the sentence the court would impose was inappropriate. The court appointed separate counsel to represent Jeter to assess whether there was a basis for him to withdraw his plea. At a later hearing, the attorney appointed solely to assess the grounds for withdrawing the plea reported that she could find no basis in criminal law or criminal procedure to justify Jeter's request to withdraw his plea. The court relieved the attorney specially appointed to represent Jeter.

The attorney who had represented Jeter at the time of his plea subsequently filed a motion on behalf of Jeter to withdraw his plea. Jeter claimed he agreed to the plea based upon his understanding that he would receive " 'half time' " credit "as opposed to 80% or 85% custody credits." He asserted that "his attorney told him the plea would result in his release at the time of his plea, or very shortly thereafter." Jeter's attorney disagreed and stated he did "not believe that he told Mr. Jeter that the plea included a 'half-time' incarceration." Indeed, Jeter's attorney wrote that "[t]he law does not support that result, and the prosecutor . . . says he did not offer that plea with the understanding that Mr. Jeter would be released immediately."

The trial court denied Jeter's motion to withdraw his plea and proceeded to sentencing. Pursuant to the plea, the court imposed a five-year sentence composed of the four-year midterm for first degree burglary plus one additional year for the prior prison term enhancement. Jeter received a total of 1,031 days of presentence custody credit composed of 859 days actually served plus 172 days of presentence conduct credit. The court imposed a restitution fine of $200 plus a parole revocation fine in the same amount, which the court stayed unless and until Jeter violated his parole. The abstract of judgment reflects that Jeter's eligibility for conduct credit[3] is limited by section 2933.1,

_____

[3] Section 2933.1 actually uses the term "worktime credit." As our Supreme Court explained in *In re Reeves* (2005) 35 Cal.4th 765, 768, fn. 4, worktime credit may refer to the type of credit that is earned after being sentenced or to presentence credit that is awarded for willingness to perform assigned labor. Presentence credit may also be awarded for complying with rules and regulations. (See, e.g., § 4019, subds. (b) & (c) [distinguishing between credit for work and for good behavior].)

which applies a 15 percent limitation on the accrual of conduct credit for persons convicted of specified violent felonies. Jeter timely appealed from the judgment of conviction. He challenged the validity of the plea and sought a certificate of probable cause, which the trial court granted.

## DISCUSSION

**1.** *Credit Limitation Pursuant to Section 2933.1*

Section 2933.1 limits conduct credit to 15 percent of the actual period of confinement for a defendant convicted of a violent felony, as defined in section 667.5, subdivision (c). (§ 2933.1, subd. (a).) Among other crimes listed in section 667.5, subdivision (c) is "[a]ny burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).) Thus, the 15 percent credit limitation does not apply to a person convicted of first degree residential burglary unless it is pleaded and proven that the residence was occupied by a non-accomplice at the time of the burglary.

Jeter contends he is not subject to the 15 percent credit limitation of section 2933.1 because he did not admit, and the court failed to find, that the residence was occupied at the time of the burglary. He argues that he merely pleaded guilty to first degree burglary but did not admit the residence was occupied at the time of the burglary. He further contends the court dismissed the remaining allegations after taking his plea, including the allegation that a non-accomplice was present during the burglary. The record of the plea does not support Jeter's contentions.

First degree burglary consists of the burglary of an "inhabited dwelling house" or other "inhabited" structures or vessels. (§ 460.) " '[I]nhabited' means currently being used for dwelling purposes, *whether occupied or not.*" (§ 459, italics added.) Therefore, a person may be convicted of first degree burglary without a showing the dwelling was occupied at the time of the burglary.

4

Here, Jeter pleaded guilty to count two of the information, which states in relevant part that Jeter committed "the crime of FIRST DEGREE BURGLARY-RESIDENTIAL, to wit: Violating Section **459** of the Penal Code, a Felony, in that said defendant did unlawfully enter 1115 FITZGERALD AVENUE, SAN FRANCISCO, an inhabited dwelling house and trailer coach and inhabited portion of a building *occupied by FELIX YIK CHAN* . . . with the intent to commit larceny and any felony." (Italics added.) The allegation that the residence was occupied was unnecessary to the first degree burglary charge but does support a finding that a non-accomplice was present during the commission of the burglary pursuant to section 667.5, subdivision (c)(21). In assessing the consequence of Jeter's guilty plea, we are guided by the principle that "[a] plea of guilty admits every element of the offense charged [citations], all allegations and factors comprising the charge contained in the pleading." (*People v. Tuggle* (1991) 232 Cal.App.3d 147, 154, disapproved on another ground in *People v. Jenkins* (1995) 10 Cal.4th 234, 252.) Thus, by pleading guilty to count two as charged, Jeter necessarily admitted that the victim was present at the time of the burglary. (See *People v. Tuggle, supra,* at p. 154.) Further, the transcript of the preliminary hearing provides ample factual basis for the admission. Consequently, it was both pleaded and proved that a non-accomplice was present in the residence at the time of the burglary.

It is irrelevant that the court may have dismissed the remaining allegations after taking Jeter's plea. At the time the court dismissed the remaining allegations in the information, Jeter had already admitted a charge that included the pertinent allegation that the residence was occupied at the time of the burglary.

Furthermore, the record is clear that the court, the prosecutor, and defense counsel understood that Jeter's plea would restrict his ability to earn conduct credit. As Jeter admits in his request for a certificate of probable cause, the court told him before sentencing that his plea required him to serve 85 percent of his sentence as a result of the plea to the burglary charge. Even if Jeter had not admitted a charge that he burglarized

5

an occupied residence, the trial court still had the power to determine at the time of sentencing whether the first degree burglary conviction constituted a violent felony under section 667.5, subdivision (c)(21). (See *People v. Garcia* (2004) 121 Cal.App.4th 271, 279 [determining whether conviction constitutes a violent felony is part of court's traditional sentencing function].) Although the court did not expressly find that the first degree burglary conviction constituted a violent felony, that finding can be implied based upon the court's imposition of the 15 percent credit limitation under section 2933.1. (See *People v. Chambers* (2002) 104 Cal.App.4th 1047, 1050-1051 [court impliedly finds sentencing allegation true when it imposes associated enhancement].) Jeter does not dispute that there is substantial evidence to support such an implied finding.

Accordingly, we find no error in the imposition of a 15 percent limitation on Jeter's ability to earn conduct credit pursuant to section 2933.1.

### 2. *Limitation on Presentence Conduct Credit*

Jeter next argues that the trial court erred in limiting his presentence conduct credit to 20 percent of the time he actually served. He claims he should have received credit at the rate of two days for every six days he actually served, as set forth in the version of section 4019 that applied to his presentence period of confinement. While we agree that the trial court erred in applying a 20 percent limitation on Jeter's presentence conduct credit, Jeter actually benefited from the error, as we explain.

The three strikes law imposes a 20 percent limitation on the accrual of conduct credit. (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5).) However, this limitation applies only to prison conduct credit, not presentence conduct credit. (*Ibid.*; *People v. Buckhalter* (2001) 26 Cal.4th 20, 32.)

At sentencing, the trial court stated as follows: "I'm going to give him credit as of today's date of 859 days credit for time served. Because of a prior strike, I'm giving him 20 percent conduct credit, which is 171 days, for a total of 1030 days total aggregate credit for time at this point." The court later clarified that Jeter should receive 172 days of conduct credit, for a total of 1,031 days of presentence credit.

6

As Jeter correctly points out, the 20 percent limitation on credit under the Three Strikes law does not apply to presentence credit. Thus, the court erred in applying a 20 percent limitation on his presentence credit. Contrary to Jeter's contention, however, he is not entitled to conduct credit under section 4019. Because he was convicted of a violent felony, he is subject to the 15 percent credit limitation imposed under section 2933.1. That limitation applies both to presentence credit and to credit earned in prison. (§ 2933.1, subds. (a) & (c).) Subdivision (c) of section 2933.1 specifically provides that the 15 percent limitation applies to periods of presentence custody "[n]otwithstanding Section 4019 or any other provision of law."

Presentence conduct credit that is awarded in error constitutes an unauthorized sentence that can be corrected at any time. (*People v. Duran* (1998) 67 Cal.App.4th 267, 270.) Because section 2933.1 applies in this case, the trial court should have awarded no more than 15 percent conduct credit to Jeter for the 859 days he actually served in custody before sentencing. Calculated to the greatest whole number (without exceeding 15 percent), 15 percent of 859 days is 128 days. (See *People v. Ramos* (1996) 50 Cal.App.4th 810, 816 [explaining proper method of calculation].) Thus, the abstract of judgment should be corrected to reflect that Jeter should receive 128 days of local conduct credit instead of the 172 days that the trial court awarded.

**3.** *Withdrawal of Plea*

In his reply brief, for the first time on appeal, Jeter contends that we should allow him to withdraw his plea if we conclude he is subject to the 15 percent limitation on the accrual of conduct credit. We could consider the contention waived because he failed to raise the argument in his opening brief on appeal. (See *People v. Becker* (2010) 183 Cal.App.4th 1151, 1156.) In any event, the contention lacks merit.

In *People v. Barella* (1999) 20 Cal.4th 261, 272, our Supreme Court held that "a defendant is not entitled to withdraw or set aside a guilty plea on the ground that the trial court, in accepting the plea, failed to advise the defendant of a limit on good-time or work-time credits available to the defendant." Consequently, Jeter is not entitled to

withdraw his plea on the ground the trial court failed to advise him at the time of his plea that he would be limited in his ability to accrue conduct credit.

To the extent Jeter may claim he received ineffective assistance of counsel in connection with his plea, the claim fails. In the trial court, Jeter asserted he was under the impression that he would receive half-time credit and that his trial counsel informed him he would be released shortly after his plea. Jeter's trial attorney disputed that he told his client he would be entitled to half-time credit. In denying Jeter's motion to withdraw his plea, the trial court impliedly found that Jeter's trial attorney was more credible on the question of whether Jeter was properly informed about the limitation on conduct credit. On appeal, Jeter has presented no reason for us to reject the trial court's resolution of this credibility issue. (See *People v. Barella, supra,* 20 Cal.4th at p. 272 [defendant's "bare assertion" that trial counsel failed to advise him of credit restriction was insufficient to justify relief on appeal].)

**4.**     *Correction of Fee Amounts*

The trial court imposed a $200 restitution fine and a $200 parole revocation fine. The abstract of judgment incorrectly indicates that the court imposed restitution and parole revocation fines of $240 each. Jeter contends the abstract of judgment must be modified to reflect the correct fine amounts. We agree, and the Attorney General concedes, that the abstract of judgment must be corrected as requested by Jeter.

### DISPOSITION

The sentence is modified to reflect an award of presentence credit totaling 987 days, consisting of 859 days of actual presentence custody credit plus 128 days of local conduct credit. The abstract of judgment shall specify that the court imposed a restitution fine (§ 1202.4) of $200 and a parole revocation fine (§ 1202.45) of $200. The trial court is directed to prepare an amended abstract of judgment in accordance with this disposition and deliver it to the Department of Corrections and Rehabilitation. Except as so modified, the judgment is affirmed.

8

_____

McGuiness, P. J.

We concur:

_____

Pollak, J.

_____

Siggins, J.